Filed 9/28/23  P. v. Candelaria CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BARCIMEO MERINO CANDELARIA,<br><br>    Defendant and Appellant. | F084475<br><br>(Super. Ct. No. LF012907A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Jim M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Jessica C. Leal and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Barcimeo Merino Candelaria sexually assaulted his stepdaughter and her friend, both of whom were 11 years old.  A jury convicted defendant of forcible and nonforcible lewd acts on children under the age of 14 years.  The trial court sentenced defendant to life in prison without the possibility of parole and two consecutive terms of 25 years to life.  Defendant argues that the trial court abused its discretion in permitting testimony of other uncharged sexual offenses defendant committed on his stepdaughter and, therefore, erred in instructing the jury with the use of those offenses pursuant to CALCRIM No. 1191A.  We affirm the judgment.

## PROCEDURAL BACKGROUND

The District Attorney of Kern County filed an amended information on November 22, 2021, charging defendant with forcible lewd acts upon a child under the age of 14 years (Pen. Code, § 288, subd. (b)(1);[1] count 1) and lewd acts on a child under the age of 14 years (§ 288, subd. (a); counts 2, 3).  The amended information also alleged defendant kidnapped the victim and the case involved multiple victims, circumstances pursuant to section 667.61, subdivisions (e)(1), (e)(4), (j)(1), and (j)(2) of the alternate sentencing scheme known as the "One Strike" law (§ 667.61) as to counts 1 and 2, and the case involved multiple victims, a circumstance pursuant to section 667.61, subdivisions (e)(4) and (j)(2) as to count 3.  Defendant pleaded not guilty and denied the allegations.

A jury convicted defendant of all counts and found true the multiple-victim special circumstances on December 7, 2021.  The trial court sentenced defendant to life in prison without the possibility of parole as to count 1 and consecutive terms of 25 years to life in

---

[1]     Undesignated statutory references are to the Penal Code.

prison as to counts 2 and 3 under the One Strike law.[2]  The court also ordered defendant

to pay victim restitution (Pen. Code, § 1202.4, subd. (f)), a $300 restitution fine (Pen.

Code, § 1202.4, subd. (b)), a $300 suspended parole revocation restitution fine (Pen.

Code, § 1202.45), $900 in habitual sex offender fines (Pen. Code, § 290.3), $2,790 in

penalty assessments on the habitual sex offender fines,[3] $90 in criminal conviction

assessments (Gov. Code, § 70373), and $120  in court operations assessments (Pen.

Code, § 1465.8).

Defendant timely appealed on June 14, 2022.

## FACTS

Defendant lived with his 11-year-old stepdaughter, D.F., her mother, and two of

his relatives in a residence in Taft.  In November 2019, D.F. and J.O. had been best

friends for seven years, were in sixth grade at the same school, and lived in separate

houses about a mile from each other.

---

[2]     We note that the abstract of judgment erroneously indicates that defendant was sentenced pursuant to sections 667, subdivisions (b)–(i) or 1170.12 rather than section 667.61.  We shall direct the trial court to correct the abstract of judgment.

[3]     The sex offender fine is subject to seven additional assessments, penalties, and a surcharge—collectively called "penalty assessments."  (See *People v. Sharret* (2011) 191 Cal.App.4th 859, 864.)  For each count, the court assessed a total of $930 in penalty assessments, which were described in the probation report as follows:  a state penalty assessment of $300 (Pen. Code, § 1464, subd. (a)); a county penalty assessment of $210 (Gov. Code, § 76000, subd. (a)); a DNA fund penalty assessment of $30 (Gov. Code, § 76104.6); a state-only DNA fund penalty assessment of $120 (Gov. Code, § 76104.7); a court construction penalty assessment of $150 (Gov. Code, § 70372, subd. (a)); an EMS fund penalty assessment of $60 (Gov. Code § 76000.5); and a state criminal surcharge of $60 (Pen. Code, § 1465.7).  These amounts are not reflected in the sentencing minutes, and the abstract of judgment erroneously describes the penalty assessments as authorized by section 290.3.  After oral pronouncement of the sentence occurs, "[t]he responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes and, more importantly, the abstract of judgment."  (*Sharret*, at p. 864.)  We may correct this error on appeal and will therefore direct the trial court clerk to prepare an amended abstract of judgment listing the amounts of and statutory basis for the base fine and each of the penalty assessments ordered in this case.  (*People v. Hamed* (2013) 221 Cal.App.4th 928, 940.)

J.O. would frequently visit D.F.'s residence and was visiting on November 20, 2019. J.O. was walking home, and defendant offered her a ride in his car. J.O. got into the back seat, and defendant drove toward her house but made a wrong turn. Defendant told J.O. that he was taking her home by a faster route, but J.O. got worried when defendant drove her to a secluded area in the desert.

Defendant pulled over and made inappropriate comments concerning her appearance. J.O. was scared and disgusted. She pulled away when defendant touched her thigh from the front seat. J.O. told defendant to stop, but then he got into the back seat with her and touched her again. Defendant touched her thigh and then her vagina over her clothes. J.O. was very scared and shaking. Defendant pulled off J.O.'s backpack, grabbed her arms, and pulled her toward him. J.O. fought defendant as he tried to pull her onto his lap. Defendant then pushed J.O. onto to her back, unbuckled her pants and eventually pushed them down her legs even though J.O. fought him. J.O. continued to fight defendant, and he pulled a gun from behind the seat and told her to keep quiet or he would kill her family and shoot her. J.O. was scared but did not think the gun was real. D.F. told her later that it was a fake gun.

Defendant tried to remove J.O.'s shirt, but she resisted. He pinned her to the seat, got on top of her, took off his pants, touched her vagina, and attempted to put his penis into her vagina. J.O. covered her vagina with her hands, and defendant was unable to move them away. Defendant again tried to remove her shirt but ended up biting her breast over her shirt. Defendant pulled away from J.O. as he ejaculated. He tried to convince her to lick his penis, but J.O. pulled her pants on. Defendant told J.O. that he would pay her $100, but she told him that she did not want it. J.O. was angry and scared and told defendant to take her home and stay away from her.

Defendant drove J.O. and dropped her a block from her home. She ran into the house crying and took a shower. J.O.'s parents were not yet home, and she did not tell her brother what happened. When J.O.'s parents returned home, she did not tell her

4.

mother what happened because she thought her mother would be angry that J.O. had gotten into defendant's car.

The next day, J.O. told D.F. what defendant had done to J.O. and discovered that defendant had been doing similar things to D.F. D.F. could not hold it in anymore and shared her experience with J.O. J.O. and D.F. told the vice principal that defendant had sexually abused them and eventually spoke with a police officer. J.O. submitted to a medical examination and, during her testimony, identified pictures of bruises on her arm caused by defendant. The nurse who conducted the examination testified that J.O. had bruises on her arms and redness on her thigh.

J.O. did not wash the clothes she wore during the attack and gave them to the police. DNA samples were obtained from J.O., defendant, J.O.'s underwear, and semen found on the back of J.O.'s underwear. Defendant's DNA was identified in the DNA obtained from J.O.'s underwear and in the semen found on her underwear. A match between the DNA on parts of the underwear and defendant was 890 billion times more likely than a random Hispanic person. A match between the DNA in the semen found on J.O.'s underwear and defendant was 230 septillion times more likely than a random Hispanic person.

Defendant had been D.F.'s stepfather for approximately five years. One day, defendant asked D.F. to accompany him when he picked up his paycheck. Defendant drove her to a deserted park and claimed that the check would be delivered to him. Defendant offered to teach D.F. to drive while they waited and had her sit on his lap. When she sat on his lap, defendant unzipped his pants, and D.F. feared that he was trying to rape her. D.F. struggled and got off his lap, but defendant touched her breasts, thighs, and vagina over her clothes.

D.F. testified that the incident in the parking lot was the first time that defendant had ever touched her like that. She agreed with the prosecutor that defendant continued to touch her, and the incidents got worse.

D.F. testified, on another occasion, she was alone in the house and defendant came home. D.F. lied to defendant and said other people were home, but when defendant ascertained that no one else was home, he grabbed D.F. by the arm, took her to the bedroom and then locked the door. Defendant took off his pants and then took off her pants. He put his penis into her vagina and had sex with her. D.F. told defendant that he was hurting her, but defendant would not stop. D.F. screamed but defendant covered her mouth. She also tried to push him off but could not because defendant held her harder. Defendant forced her to hold his penis.

Defendant threatened to hurt D.F. or her mother if D.F. ever told anyone that defendant was having sex with her. Defendant had sex with D.F. before this incident. Defendant did "things like this" to D.F. more than five times and threatened her not to say anything each time. D.F. never told anyone before because she was afraid of defendant. J.O. also testified that prior to the incident, she noticed that D.F. did not want to be around defendant, and they would walk home from school rather than call him for a ride.

## DISCUSSION

**I.  The trial court did not abuse its discretion in admitting evidence of prior sexual offenses pursuant to Evidence Code section 1108.**

### A.  Background

Defendant filed a motion in limine on November 22, 2021, requesting that the trial court exclude any reference to uncharged sexual acts committed by defendant. Defendant argued that he had not received notice of any such acts pursuant to Penal Code section 1054.7 and Evidence Code section 1108. The prosecutor also filed an in limine motion raising six issues but did not include a motion regarding defendant's prior sexual conduct.

During the hearing on the motions, defendant's counsel argued that the prosecutor should only be permitted to present evidence of the charged offenses and the minor

victims should be precluded from testifying as to uncharged offenses. The prosecutor agreed that the charges only involved the incidents previously identified but argued that D.F.'s police interview alluded to several other acts that, while not the basis for the charged crimes, should be admitted as evidence pursuant to Evidence Code section 1108. The prosecutor indicated that she had previously advised defense counsel that she would be questioning D.F. regarding the other incidents revealed during her police interview and contained within the police reports that had been previously provided. The prosecutor advised the court that the police reports included D.F.'s statements that defendant had raped her previously for several months, although D.F. did not provide details of the prior acts.

Defense counsel responded that the information of the other acts was not specific enough and due process required a greater degree of specificity than allegations that the conduct occurred continuously or numerous times. Defendant filed a supplemental memorandum in support of his motion and argued that evidence of defendant's other sexual acts should be excluded because the evidence was not presented at the preliminary hearing. The trial court heard additional argument on December 1, 2021, and concluded that defendant's reliance on *People v. Graff* (2009) 170 Cal.App.4th 345, a case in which the defendant was convicted of charges not shown by the preliminary hearing evidence, was not controlling because it did not address the use of uncharged prior sexual offenses. The court further found that the prosecutor had provided proper notice of the uncharged acts through the police reports.

The trial court balanced the probative value of the proposed testimony with the prejudicial effect on the jury and concluded that the testimony was probative of defendant's propensity to commit the charged offenses and D.F.'s credibility. The court stated that testimony would be quick to present, involving just a few questions and answers, and would not confuse the jury because the uncharged prior sexual offenses

7.

occurred at different times than the charged offense. The court concluded that the probative value of the testimony outweighed any prejudicial effect.

At trial, D.F. testified to one offense when defendant touched her vagina and breasts (charged in count 2) and a second offense when he raped her (charged in count 3). D.F. testified that defendant's conduct worsened after the first touching. When testifying as to the rape, D.F. indicated that defendant had raped her before that incident and then testified that defendant had done "these type of things" more than five times previously.

### B. Standard of Review and Applicable Law

Evidence Code section 1108 allows the prosecution to introduce evidence that the defendant in a sexual offense case committed other, uncharged sexual offenses as character evidence, notwithstanding the fact that such evidence is usually inadmissible under Evidence Code section 1101. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) Evidence Code section 1108 "was intended in sex offense cases to relax the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, at p. 911.)

Evidence made admissible by Evidence Code section 1108 remains subject to exclusion under Evidence Code section 352 if its probative value is substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. (Evid. Code, § 352; see *Falsetta*, *supra*, 21 Cal.4th at pp. 916–917.) The prejudice that Evidence Code section 352 seeks to avoid is not that which " ' "naturally flows from relevant, highly probative evidence." ' " (*People v. Harris* (1998) 60 Cal.App.4th 727, 737.) Rather, " 'prejudice' " in this context evokes " ' "an emotional bias" ' " or " ' " ' "prejudging" a person or cause on the basis of extraneous factors.' " ' " (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1115.)

Evidence Code section 352 generally gives a trial court discretion to " 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, p. 1160, fn. 3 (*Villatoro*), quoting Evid. Code, § 352.)

We review a trial court's ruling under Evidence Code sections 352 and 1108 for abuse of discretion. (*People v. Loy* (2011) 52 Cal.4th 46, 61.) We will not disturb a trial court's exercise of discretion unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Dworak* (2021) 11 Cal.5th 881, 899–900, citing *People v. Miles* (2020) 9 Cal.5th 513, 587, 587–588.)

## C.     Analysis

### 1.     *Defendant received adequate notice of the prosecutor's intent to offer evidence of uncharged prior sexual offenses.*

Under Evidence Code section 1108, subdivision (b) the prosecutor is required to "disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered in compliance with the requirements of Section 1054.7 of the Penal Code." Section 1054.7 requires, in relevant part, that "disclosures … be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred."

Defendant claims the trial court erred in failing to exclude the evidence based on the prosecutor's failure to comply with the 30-day notice requirement. The trial court rejected defendant's argument because the prosecutor had provided the police reports to the defense and the prosecutor indicated to the trial court that she had previously advised defense counsel that she intended to present the uncharged acts mentioned in the police reports. Defense counsel did not contradict the prosecutor's statements.

9.

Both parties rely on this court's decision in *People v. Soto* (1998) 64 Cal.App.4th 966 (*Soto*) to support their contrary positions on the timeliness and adequacy of the disclosure. In *Soto*, the defendant claimed the trial court erred in admitting uncharged sexual offense evidence at trial because the prosecutor failed to comply with the 30-day notice requirement. (*Id*. at pp. 979–980.) The prosecutor had, more than 30 days before trial, produced the police report containing the victims' claims they were molested by defendant as children and stated his intention to use those incidents in the police report. (*Id*. at p. 981.) We recognized that "[t]he notice and disclosure requirements were designed to 'protect the defendant from unfair surprise and provide adequate time for preparation of a defense.' " (*Id*. at p. 980.) We concluded that the reports provided "a summary of the substance of the proposed testimony" and the prosecutor's statements "provided sufficient notice of his intent to introduce such evidence at trial pursuant to [Evidence Code] section 1108." (*Id*. at p. 982.)

The disclosure requirement is intended to prevent unfair surprise and allow the defense adequate time to prepare. (See *Soto*, *supra*, 64 Cal.App.4th at p. 982.) The parties do not dispute that the prosecutor disclosed the underlying reports more than 30 days before trial. Defendant argues, however, that the prosecutor did not specifically inform him of the intent to introduce the evidence summarized in the reports under Evidence Code section 1108. However, at the hearing, the prosecutor advised the trial court that she had verbally advised defense counsel that she intended to introduce the evidence, and defense counsel did not contradict her statements. In addition, defense counsel's responsive argument addressed only whether the description of the uncharged sexual offenses was specific enough.

We view the disclosure of the reports in this case as akin to the disclosure of the police report in *Soto*, *supra*, 64 Cal.App.4th at page 982. So long as the reports provided the defense with "a summary of the substance of the proposed testimony" (*ibid*.), the disclosure requirement of Evidence Code section 1108, subdivision (b) is satisfied.

10.

While defendant objects to the specificity of the police report, D.F.'s testimony appears to have been limited to the information disclosed in the police report, described by the prosecutor as D.F.'s general statement that she had been raped and touched numerous times.

We also agree with the People that defendant's failure to pursue his need for a continuance is fatal to a claim of prejudice attributable to late notice. "Ordinarily, unless the untimely notice adversely affected earlier proceedings, the failure to seek a continuance precludes any showing of prejudice attributable to delay in giving notice of aggravating evidence." (*People v. Medina* (1995) 11 Cal.4th 694, 771; accord, *People v. Mayfield* (1997) 14 Cal.4th 668, 778–779, abrogated in part on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.) The focus of defendant's late notice argument is the wrongful admission of the evidence; he claims on appeal that the trial court erred in failing to exclude the evidence. However, defendant cites no authority for the proposition that, even if we assume a violation occurred, he was entitled to exclusion of the evidence as a remedy for failing to comply with the 30-day notice requirement, and defendant's reply brief does not address this aspect of the People's argument.

The trial court is permitted to exclude witness testimony "only if all other sanctions have been exhausted." (§ 1054.5, subd. (c); see *People v. Bowles* (2011) 198 Cal.App.4th 318, 325–326.) "[T]he exclusion of testimony is not an appropriate remedy absent a showing of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial." (*People v. Jordan* (2003) 108 Cal.App.4th 349, 358.) "[T]he prejudice would necessarily have to be substantial and irremediable," and "the consequence to the truth-finding process would have to be carefully balanced." (*People v. Gonzales* (1994) 22 Cal.App.4th 1744, 1757–1758.)

Under these circumstances, we find the denial of defendant's motion to exclude the evidence was not an abuse of discretion. We disagree notice was inadequate, but in any event, defendant has not shown he suffered any prejudice in light of the limited

11.

nature of the testimony and his failure to request a continuance. (See *People v. Medina*, *supra*, 11 Cal.4th at p. 771.)

### 2. The trial court did not abuse its discretion in admitting evidence of uncharged prior sexual offenses.

The trial court did not abuse its discretion in admitting evidence of uncharged prior sexual offenses. Evidence Code section 1108 defines the type of sexual offenses that may be admitted as evidence when defendant is accused of a sexual offense. (See Evid. Code, § 1108, subd. (d).) The definition of "sexual offense" includes conduct prohibited by Penal Code sections 288 (lewd acts with a child) and 261 (rape). (Evid. Code, § 1108, subd. (d)(1)(A).) At trial, D.F. testified to one offense when defendant touched her vagina and breasts (charged in count 2 as lewd acts on a minor) and a second offense when he raped her (charged in count 3 as lewd acts on a minor). D.F. testified that after defendant touched her vagina and breasts through her clothing, his later conduct toward her worsened. When testifying as to the rape charged in count 3, D.F. indicated that defendant had raped her before that incident and also that defendant had done "these type of things" more than five times previously.

Defendant argues that D.F.'s testimony regarding the uncharged sexual offenses was "too vague" to be admissible as propensity evidence. While the prosecutor referred to the prior sexual offenses as "other things" during questioning, D.F.'s testimony was specific that defendant touched her vagina, breasts, and raped her as charged in counts 2 and 3, and that he had done so more than five times between the incidents in those counts. This testimony did not include the details surrounding the uncharged prior sexual offenses, but it was specific enough to establish that defendant had engaged in lewd behavior with D.F. previously under circumstances similar to the conduct charged in counts 2 and 3. The jury received instruction as to the elements of section 288, subdivision (a) to permit them to determine whether the uncharged sexual offenses were violations of section 288, subdivision (a). If the testimony was too vague to establish that

12.

defendant's prior sexual offenses violated section 288, subdivision (a), then the jury would have disregarded the other acts as instructed by CALCRIM No. 1191A.

Defendant argues that D.F.'s description of the conduct fails to satisfy federal and state principles of due process of law, which require the charges to be specific as to the type of acts committed.  We reject defendant's argument that D.F.'s testimony was too vague to meet the "generic testimony" standards set forth in *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*).  Our Supreme Court held that use of generic testimony[4] to prove child molestation charges does not, in itself, violate due process.  (*Jones*, at pp. 316–322.) For purposes of proving each charge against a defendant, generic testimony can be substantial evidence sufficient to support a conviction if the victim describes the conduct with sufficient specificity to differentiate between the various types of proscribed conduct, the number of acts committed with sufficient certainty to support each of the counts alleged, and the general time period when the acts occurred to demonstrate that they were within the applicable limitation period.  (*Id.* at p. 316.)

However, *Jones* addressed whether evidence in that case was specific enough to support multiple charges based on conduct occurring over a period of time in light of the defendant's due process rights to notice of the charges against him and right to defend against those charges.  (*Jones*, *supra*, 51 Cal.3d at pp. 316–320.)  *Jones* did not address the admissibility of uncharged prior sexual acts pursuant to Evidence Code section 1108, nothing in *Jones* imposes minimum specificity requirements on evidence of uncharged acts admitted under Evidence Code section 1108, and defendant has cited no authority to extend its requirements to uncharged conduct.  The due process concerns addressed in *Jones* do not arise with regards to Evidence Code section 1108.  As our Supreme Court recognized, Evidence Code section 1108 governs the admissibility of evidence but "it

---

**4**      "Generic testimony," in this context, means testimony by a victim regarding the commission of multiple sexual offenses when it does not "give specific details regarding the time, place and circumstances"—"testimony describing a series of essentially indistinguishable acts of molestation."  (*Jones*, *supra*, 51 Cal.3d at pp. 299–300.)

13.

defines neither a crime nor punishment." (*People v. Story* (2009) 45 Cal.4th 1282, 1294.) Our Supreme Court has also recognized that Evidence Code section 1108 contains no temporal limitation on the uncharged sexual offenses that may be introduced as evidence and, therefore, no statute of limitations concerns. (See *Villatoro*, *supra*, 54 Cal.4th at pp. 1160–1161; see also *People v. Branch* (2001) 91 Cal.App.4th 274, 284 [allowing evidence of sexual offenses committed 30 years prior to the charged crime].) In addition, admission of evidence pursuant to Evidence Code section 1108 requires no jury unanimity or that the uncharged sexual offenses correspond to a particular count. In short, none of the constitutional concerns addressed in *Jones* apply when considering the admission of evidence of uncharged sexual offenses pursuant to Evidence Code section 1108.

The trial court here did not abuse its discretion in admitting the evidence. When evaluating the prejudicial effect of evidence of uncharged sexual offenses, courts balance a number of factors such as "degree of certainty of its commission," how likely it is to distract the jury from the main inquiry, whether it is similar to the charged offense, what sort of prejudicial impact it is likely to have on the jurors, the burden on the defendant in defending against the uncharged sexual offense, and "the availability of less prejudicial alternatives to its outright admission, such as … excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

Any evidence of sexual offenses during the period of time defendant abused D.F. was relevant and probative as to defendant's propensity to commit the charged sexual offenses. The testimony of the uncharged sexual offenses was elicited from D.F. in a few questions, took no longer than a few minutes, and did not include any details of the other incidents. Defendant has failed to demonstrate any additional burden in defending against the additional incidents of uncharged sexual conduct.

Under such circumstances, we conclude the trial court did not abuse its discretion in weighing the evidence under Evidence Code section 352 and admitting it under

14.

Evidence Code section 1108. Because the probative value of the uncharged sexual offenses substantially outweighed the possibility of undue consumption of time presenting it, unfair prejudice, or misleading the jury, there was no abuse of discretion in allowing it.

II.     **The trial court did not err by instructing the jury with CALCRIM No. 1191A after admitting evidence of prior sexual offenses pursuant to Evidence Code section 1108.**

### A.     Background

The trial court instructed the jury with CALCRIM No. 1191A, which provided that the jury must determine whether the prosecution had proven uncharged sexual offenses by a preponderance of the evidence and, if so, the jury could use the evidence to conclude that defendant was disposed to commit the charged sexual offenses and more likely to have committed the charged crimes. CALCRIM No. 1191A also provided that the evidence of uncharged sexual offenses was not, by itself, sufficient evidence to prove defendant committed the charged crimes.

### B.     Standard of Review and Applicable Law

Defendant argues that the testimony regarding uncharged sexual offenses was too vague to be admissible and, therefore, did not provide substantial evidence to support the instruction. Defendant also argues that the instruction permitted the jury to draw an irrational inference and reduced the prosecution's burden of proof.

We independently review the record to determine whether substantial evidence supports a jury instruction. (See *People v. Kerley* (2018) 23 Cal.App.5th 513, 565.) Substantial evidence is evidence that a reasonable jury could find persuasive. (*People v. Williams* (2015) 61 Cal.4th 1244, 1263.) " ' "It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference [citation]." ' " (*People v. Alexander* (2010) 49 Cal.4th 846, 920–921.) "Permissive

15.

inferences are therefore constitutionally suspect [violate due process] when, 'under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.' " (*People v. Gomez* (2018) 6 Cal.5th 243, 290.)

### C.    Analysis

Defendant concedes that he did not object to the trial court instructing the jury with CALCRIM No. 1191A, nor does defendant contend that these instructions are incorrect statements of the law.  Therefore, defendant has forfeited his claim of instructional error by failing to raise it in the trial court.  (*People v. Bolin* (1998) 18 Cal.4th 297, 326.)

But even if not forfeited, we reject defendant's argument.  Defendant contends the instruction given was incorrect because there was "no substantial evidence of uncharged prior crimes to support the instruction."  He also contends the instruction reduced the prosecution's burden of proof.  We reject defendant's argument that the instruction, while stating a correct principle of law, had no application in this case.  Defendant's argument is based on his previously addressed claim that the evidence relied on in giving the instruction was too vague; as we concluded above, D.F.'s testimony that defendant sexually touched D.F. after the first time and that he raped her five times thereafter was sufficiently specific for the trial court to conclude that D.F. described sexual offenses within the meaning of Evidence Code section 1108.  As our Supreme Court has recognized, CALJIC No. 2.50.01, the predecessor to CALCRIM No. 1191A, permits jurors to infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses, and "[t]he inference is a reasonable one." (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012.)

We also reject defendant's arguments that the instruction reduced the prosecution's burden of proof.  Our Supreme Court held in *Reliford*, that CALJIC No. 2.50.01, the predecessor to CALCRIM No. 1191A, is a correct statement of the law, and does not reduce the prosecution's burden of proof.  (*People v. Reliford*, *supra*,

29 Cal.4th at pp. 1012–1016; see *Villatoro*, *supra*, 54 Cal.4th at p. 1160.) *Villatoro* also noted that *People v. Cromp* (2007) 153 Cal.App.4th 476, 480 found no material difference between CALJIC No. 2.50.01 and CALCRIM No. 1191A. (*Villatoro*, at p. 1160.)

Because we conclude the trial court did not abuse its discretion in admitting evidence of defendant's uncharged prior sexual offenses, we find that the trial court did not err or violate defendant's constitutional rights by instructing the jury with CALCRIM No. 1191A.

## DISPOSITION

The trial court is directed to prepare an amended abstract of judgment reflecting that defendant was sentenced pursuant to section 667.61 rather than sections 667, subdivisions (b)–(i) or 1170.12. The trial court is further directed to amend the May 19, 2022 minute order and the abstract of judgment to indicate the amounts of and statutory basis for each penalty assessment and surcharge reflected in the $2,790 total penalty assessment on the habitual sex offender fines ordered in this case and forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

In all other respects, the judgment is affirmed.


HILL, P. J.

WE CONCUR:


PEÑA, J.


MEEHAN, J.


17.